UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REVA E. RICHARDSON,

      Plaintiff,

v.

      Case No. 1:13-cv-00860-PJG

      Hon. Phillip J. Green

WAL-MART STORES, INC.,

      Defendant.

_____/

## OPINION

This action arose from the March 25, 2013, termination of plaintiff Reva E. Richardson's employment with defendant Wal-Mart.[1]  In her three-count complaint, plaintiff claims that Wal-Mart discriminated against her on the basis of her age and her race (Caucasian), both in violation of Michigan's Elliott-Larsen Civil Rights Act, and that Wal-Mart intentionally inflicted emotional distress upon her.  Plaintiff has voluntarily dismissed both the race-discrimination and the emotional-distress claims (Dkt. 44, 68), leaving only the age-discrimination claim.

Pending before the Court is Wal-Mart's motion for summary judgment (Dkt. 45).  Plaintiff filed her response (Dkt. 53) and Wal-Mart replied (Dkt. 60).  The Court held oral argument (Dkt. 62).  Plaintiff filed two post-hearing briefs (Dkt. 66 & 67), and Wal-Mart filed one (Dkt. 70).  Having considered the parties' oral and written

---

[1]Defendant notes that it should have been sued under the name Wal-Mart Stores East, L.P. (Answer, Dkt. 6, Page ID 28).  The Court will refer to the defendant simply as Wal-Mart.

submissions, and for the reasons set forth herein, the Court will grant Wal-Mart's motion for summary judgment.

## Applicable Standards

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Sadie v. City of Cleveland*, 718 F.3d 596, 599 (6th Cir. 2013). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Federal Rule of Civil Procedure 56(c)(1). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the respondent assumes the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the respondent may not rest on the mere allegations of her pleadings, but rather, must present "specific facts showing there is a genuine issue for trial." *El-Seblani v. IndyMac Mortg. Servs.*, 510 Fed. Appx. 425, 427 (6th Cir. 2013). "In other words, the

movant [can] challenge the opposing party to 'put up or shut up' on a critical issue. After being afforded sufficient time for discovery . . . if the respondent [does] not 'put up,' summary judgment is proper." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [respondent].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Davis v. Cintas Corp.*, 717 F.3d 476, 491 (6th Cir. 2013).

Upon the respondent's failure "to properly support an assertion of fact," or "to properly address another party's assertion of fact," the court may consider the fact undisputed for purposes of the motion. FED. R. CIV. P. 56(e)(2). The court may grant summary judgment "if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3).

## **Findings of Fact**

The following facts are either beyond genuine dispute or are treated as true to the extent they support plaintiff's allegations.

Plaintiff was hired to work for Wal-Mart at its Lansing Store (No. 2869) on November 14, 2000; she was 49 years old at the time (Pltf. Dep. at 45-47, Dkt. 52-1, Page ID 865-67). As a new "associate" (employee), she participated in an orientation program that included an introduction to the policies in Wal-Mart's Associate Handbook (*id.* at 48-52, 62-67, Page ID 868-72, 882-87).

Plaintiff was employed as an hourly associate and, at the time of her discharge, she held the position of Grocery Reclamation Associate (*id.* at 107, 124, Page ID 927, 944; Pltf. Dep. Exh. 17, Dkt. 46-3, Page ID 528). Her duties included receiving and stocking merchandise, handling claims and returns, and "ensuring a safe work environment" (Pltf. Dep. Exh. 17, Page ID 528). Her job description, which she signed July 13, 2012, noted that she was to "follow[] Company policies and procedures" and "show[] integrity and ethical behavior in all work situations" (*id.*).

Wal-Mart has a written Discrimination & Harassment Prevention Policy, which prohibits discrimination on the bases, among other things, of race, gender and age; it directs employees to report discriminatory conduct to "any salaried member of management or confidentially and/or anonymously to the Global Ethics Office" (Edwards Decl. Exh. 1, Dkt. 46-4, Page ID 546-47). Wal-Mart's progressive discipline policy, called "Coaching for Improvement," utilizes a four-step process, as revised in April 2012: the first three involve "written coaching," and the final step is termination (Edwards Decl. Exh. 3, Page ID 553-54).[2] Plaintiff received training on the Coaching for Improvement Policy (Pltf. Dep. at 75-78, 80, Page ID 895-98, 900; Pltf. Dep. Exh. 8, Dkt. 46-3, Page ID 519). Plaintiff had continued access to the company's policies through "The Wire," Wal-Mart's intranet (Pltf. Dep. at 69-70, Page ID 889-90).

---

[2]Prior to April 2012, the first three steps were called "Verbal," "Written," and "Decision Day," respectively (Piotrowski Dep. at 166, Dkt. 46-6, Page ID 680). The April 2012 change was limited to the terminology used to designate each of the steps (*id.* at 167, Page ID 681).

When "coachings" occur, they are documented electronically (Piotrowski Dep. at 113-15, Dkt. 46-6, Page ID 676-77; Vaillancourt Dep. at 39, Dkt. 46-7, Page ID 688). A manager prepares for the coaching by typing the relevant information and applicable policy into the computer; the manager then reviews it with the associate (Vaillancourt Dep. at 39-40, Page ID 688). The attending managers electronically sign each coaching, and with respect to each of the second and third steps in the disciplinary process, the associate also acknowledges having received it by entering her Wal-Mart computer user ID and password (*id.*; Piotrowski Dep. at 118-19, 123, 125-26, 192-93, Page ID 677-79, 682; Behnke Dep. at 26, 38, Dkt. 46-8, Page ID 698-99).

On January 22, 2011, plaintiff received her first coaching (called "Verbal Coaching" at the time) regarding her involvement in her daughter's attempt to exchange a damaged laptop computer at the Lansing Wal-Mart store; this Coaching was conducted by Shift Manager Paul Borema with Assistant Manager Denise Lab acting as a witness, and it was documented electronically (Borema Decl. ¶ 8, Dkt. 46-9, Page ID 705-06; Pltf. Dep. at 159-60, Page ID 979-80; Pltf. Dep. Exh. 22, Page ID 534). According to the coaching, plaintiff had erroneously advised another associate that store policy allowed the return of the damaged laptop, and she told a manager who was involved in the attempted return that another manager had previously been coached for refusing a return under similar circumstances (Pltf. Dep., Exh. 22). The coaching noted that plaintiff "created a conflict of interest by becoming involved in a family member's transaction," and it counseled her to "ensure she does not try to influence other assocaites (sic) decisions involving a relative's transaction" (*id.*). It also put

plaintiff on notice that the "next level of action," should such behavior continue, would be "Second Written up to and including Termination" (*id.*).

Plaintiff acknowledged the incident involving her daughter's attempt to return the damaged laptop, including the fact that she offered to help another associate exchange the laptop and that she discussed the matter with a manager; she denied, however, having told the manager about another manager having been coached for refusing such a return (Pltf. Dep. at 156-59, Page ID 976-79).  She also acknowledged having met with Mr. Borema and Ms. Lab about the matter, and testified to her belief that the damaged laptop was returnable under store policy (*id.* at 159-61, Page ID 979-81).  Plaintiff disputed that this meeting with the two managers constituted "discipline" (*id.* at 161, Page ID 981).  She had a good relationship with Mr. Borema (*id.* at 127, Page ID 947), and she has no information to suggest that he was involved in the later decision to terminate her employment (*id.* at 162, Page ID 982).

On September 9, 2011, plaintiff received her Second Written Coaching (then simply called "Written Coaching") for failing to properly package a regulated hazmat (hazardous material) item that had been returned to the store (Nowlan Decl. ¶¶ 6-7, Dkt. 46-10, Page ID 710-11; Pltf. Dep. Exh. 16, Page ID 527).  The coaching was conducted by then Shift Manager Dawn Nowlan and witnessed by then Store Manager Mark Darby, and it was documented in Wal-Mart's electronic coaching system (Nowlan Decl. ¶¶ 6, 7, Page ID 710-11).  The coaching noted that plaintiff's failure to use the proper packaging could have caused Wal-Mart to incur "department of transportation fines, negative publicity within the community," and the implementation of "restricted

processing regulations" (Pltf. Dep. Exh. 16, Page ID 527). Plaintiff electronically acknowledged this coaching, and she drafted an action plan: "I UNDERSTAND BY NOT PROPERLY PACKAGING THE HAZARD MATERIAL THAT IT COULD HAVE CREATED A SERIOUS IMPACT TO OUR STORE. I NEED TO BE MORE CAREFUL WHEN SCANNING ITEMS TO BE RETUND (sic). I WILL REVIEW THE SOP AND FOLLOW THEIR GUIDE LINES. I WILL USE THIS AS A LEARNING TOOL TO GO FORWARD SO THAT I DO NOT MAKE THIS MISTAKE AGAIN" (Nowlan Decl. ¶ 8, Page ID 711; Pltf. Dep. Exh. 16, Page ID 527).[3]

Plaintiff testified that she did not know whether she mispackaged the hazmat item at issue in the Second Written Coaching (Pltf. Dep at 89-90, Page ID 909-10), but she did not exercise her right under Wal-Mart's "Open Door" policy to contest it (*id.* at 96, Page ID 916). Plaintiff acknowledged having entered her computer user ID and password at the time of the coaching (*id.* at 93, Page ID 913). She testified that Mr. Darby told her at the time that this coaching would not appear on her record, but that she was not to handle hazmat areas anymore (*id.* at 91, Page ID 911).

The following month, plaintiff received a rating of "exceeds expectations" on her annual performance evaluation (Vaillancourt Decl. ¶ 5, Dkt. 46-13, Page ID 740). The

---

[3] Plaintiff testified that Mr. Darby "yelled" at her during this coaching because she typed her action plan using all capital letters (Pltf. Dep. at 94, Page ID 914). Ms. Nowlan does not recall Mr. Darby yelling at plaintiff or any other associate (Nowlan Decl. ¶ 9, Page ID 711). This dispute of fact is not material to any issue in this motion. Assuming it is true, there is nothing about this incident from which an inference of age discrimination may reasonably be drawn. Plaintiff does not allege that Mr. Darby made any age-related remarks, nor has she proffered evidence that he exhibited any age animus toward her.

evaluator, then Assistant Manager Kathy Vaillancourt, noted that plaintiff "ensures that the correct processes are followed daily [and] teaches and trains associates the proper methods of disposing of hazmat materials" (*id.*). Ms Vaillancourt explained that the evaluation comment was limited to "disposing" of hazmat materials, which is "completely different" from the "processing and handling [of] hazmat items for shipping to the return center," for which plaintiff had been coached (*id.* ¶ 6; *see also id.* ¶ 7, Page ID 740-41 (explaining the difference)).  As the Store Manager at the time, Mr. Darby signed the evaluation, along with Ms. Vaillancourt (Darby Dep. at 4, 88, Dkt. 46-5, Page ID 662, 667).

In the beginning of 2012, plaintiff began reporting to then Assistant Manager for Operations Adam Eschtruth (Eschtruth Decl. ¶¶ 4-5, Dkt. 46-14, Page ID 744).  On August 27, 2012, Mr. Eschtruth was advised that plaintiff had accrued her fourth absence in a six-month period (*id.* ¶ 7, Page ID 745)  He prepared a coaching that day after reviewing plaintiff's attendance record to confirm the four absences (*id.*).

Under Wal-Mart's Attendance Policy, an associate who accrues four absences in any six-month period is subject to disciplinary action under the coaching policy (*id.* ¶ 6).  An absence accrues when an associate "calls off" work (an absence for three consecutive days for the same reason counts as one absence); an absence can also accrue from three unapproved instances of tardiness or leaving early during a six-month period (*id.*).  Plaintiff accrued one absence as a result of missing work without authorization on March 15-17, 2012; she accrued a second absence on June 22, 2012, as a result of leaving early without authorization on May 10, and being tardy on May

11 and June 22; she accrued a third absence as a result missing work on June 16-18, 2012; and she accrued a fourth absence when she missed work on August 20, 25, and 26, 2012 (*id.* ¶ 9, Page ID 745-46; Eschtruth Decl. Exh. 2, Page ID 753-54).

Usually, a violation of the four-absences rule results in a First Written Coaching, but because plaintiff had an "active" Second Written Coaching (relating to the mispackaging of a hazmat item), Mr. Eschtruth utilized the next level: Third Written Coaching (Eschtruth Decl. ¶ 10, Page ID 746). Mr. Eschtruth directed plaintiff to draft an action plan, as required by the coaching policy (*id.* ¶ 11). She drafted the following: "I am not a person that calls in unless there is a very good reason for not being at work when scheduled. My plan of action is to come to work when I am scheduled" (Eschtruth Decl. Exh. 1, Page ID 750; Pltf. Dep. at 169, Page ID 989). During the Coaching session, plaintiff stated that her absence on August 20, 25 and 26 was the result of having been stung by bees (Eschtruth Decl. ¶ 11, Page ID 746). Mr. Eschtruth advised plaintiff that, if she provided medical documentation, he would review the fourth absence; but plaintiff never provided the documentation (*id.*).

Plaintiff used the Open Door process to challenge the Third Written Coaching, addressing the issue with both Shift Manager Jason Piotrowski and Market Manager Diane Behnke (Pltf. Dep. at 169-71, Page ID 989-91; Piotrowski Dep. at 75, Page ID 673; Behnke Dep. at 12-14, Page ID 696-97). The coaching was sustained by both managers (*id.*). Plaintiff testified that she offered to provide medical documentation

to Ms. Behnke, but Ms. Behnke did not consider it (Pltf. Dep. at 170-71, Page ID 990-91).[4]

Mr. Eschtruth prepared plaintiff's annual performance evaluation in October 2012, rating her as a "Solid Performer"; among his written comments was that she needed "to focus on making her attendance better" (Eschtruth Decl. Exh. 3, Page ID 757-58). Plaintiff was given a 40-cent increase in her hourly pay rate (*id.*, Page ID 758). During the October 15, 2012, evaluation meeting, plaintiff wrote two comments on the evaluation: one related to her interest in learning more about "the operations in invoicing," and the other noted that she "enjoy[ed] working at Wal Mart and learning new things" (*id.*; Pltf. Dep. at 138, Page ID 958).

Plaintiff testified that, during the evaluation meeting, Mr. Eschtruth repeatedly asked her when she was going to "quit" or "leave" Wal-Mart, and he noted that she had worked at Wal-Mart a long time (Pltf. Dep. at 135-37, 333, Page ID 955-57, 1153). Plaintiff initially ignored his questions, but when he blocked her from leaving, she eventually responded, stating: "When I can no longer walk" (*id.* at 137-38, Page ID 957-58). Plaintiff stated that Mr. Eschtruth complimented her on her knowledge of store operations, and that he asked her to provide training to the salaried managers before she quit (*id.* at 137, Page ID 957). Plaintiff acknowledged that Mr. Eschtruth had never spoken to her about quitting prior to this evaluation (*id.* at 139, Page ID 959).

---

[4]Plaintiff testified to her belief that she did not have three absences under the Attendance Policy, even if the August dates were counted as an absence (Pltf. Dep. at 171-72, Page ID 991-92). She has offered nothing, however, to contest the accuracy of Wal-Mart's attendance records (see Eschtruth Decl. Exh. 2, Page ID 753-54).

Plaintiff has no recollection of using the Open Door process to complain about her evaluation or Mr. Eschtruth's questioning her about quitting (*id.* at 144, Page ID 964). When asked if she complained about the fact that Mr. Eschtruth had blocked her from leaving until she answered his question, plaintiff responded: "I did not open door that specific incident to any member of management" (*id.* at 334-35, Page ID 1154-55).

According to plaintiff's son, Gregory Richardson, who worked for Wal-Mart at the time, Mr. Eschtruth had a conversation with him about plaintiff in which he questioned plaintiff's age and commented to the effect that she was too old to work (Richardson Dep. at 22-27, Dkt. 52-7, Page ID 1437-42).[5]  The only other persons Mr. Richardson can recall being present during this conversation were two other employees:  Cody Thornton and Jami Slocum (*id.* at 24, Page ID 1439).  Mr. Richardson acknowledged that he never heard any other manager comment about his mother's age (*id.* at 32, Page ID 1447).

Mr. Thornton testified to having a conversation with Messieurs Eschtruth and Richardson in the Fall of 2012, in which the subject of plaintiff's age came up (Thornton Decl. ¶ 5, Dkt. 46-16, Page ID 766-67).  Mr. Thornton's account differs from Mr. Richardson.  Mr. Thornton stated that plaintiff's age came up when he (Mr. Thornton) complained about the fact that plaintiff had asked him to pick up some boxes for her, something he believed she should have done for herself (*id.*).   Mr.

---

[5]Gregory Richardson's employment with Wal-Mart was terminated in August 2013 for violating its Attendance Policy  (Richardson Dep. at 9-13, Page ID 1424-28).

Eschtruth's comment was that plaintiff "was getting older" and, accordingly, Mr. Thornton should "give her a break" (*id.*). Mr. Thornton also testified that it was Mr. Richardson who made a statement expressing his wish that plaintiff did not have to work anymore (*id.*). Mr. Slocum testified that he never heard Mr. Eschtruth make any statement about plaintiff being too old or that she should not be working (Slocum Decl. ¶ 4, Dkt. 46-17, Page ID 769).[6]

Mr. Eschtruth left the Lansing store in November 2012, assuming the position of Assistant Manager at the Okemos Wal-Mart store (Eschtruth Decl. ¶ 17, Page ID 748). He testified that he had no involvement in the decision to terminate plaintiff's employment, and that he had no contact with Mr. Darby after leaving the Lansing store (*id.*).

On March 1, 2013, Shift Manager Jason Piotrowski asked plaintiff to handle the receiving duties in the General Merchandise side of the store – this involves tracking and documenting the receipt of merchandise from delivery services such as Federal Express and United Parcel Service (Pltf. Dep. at 176-79, Page ID 996-99). Plaintiff used a portable table she set up between two bay doors in the receiving area with pallets on either side for stacking the newly-received merchandise (*id.* at 177, Page ID 997). Plaintiff also used an "L-Cart" to stack "specialty division" merchandise, such as

---

[6]For purposes of this motion, the Court gives plaintiff the benefit of all reasonable inferences and assumes that Mr. Eschtruth made the statements as recounted by Mr. Richardson. Mr. Thornton's testimony regarding the time frame for this conversation – Fall of 2012 – is being considered as he appears to be the only witness who does so, and his testimony in this regard is uncontested.

pharmaceuticals, optical goods, jewelry, and electronics, for later delivery to the respective division (*id.* at 181-84. Page ID 1001-04).  Plaintiff testified that, at the end of the day, she used a pallet jack to raise one of the pallets; when she took a step backward she fell, breaking her wrist (*id.* at 184-85, Page ID 1004-05).  When plaintiff screamed, two other Wal-Mart employees came to check on her; one of whom called a "Code White," which alerts managers to the fact that an accident has occurred (*id.* at 188, Page ID 1008).

Plaintiff's supervisor, Kathy Vaillancourt, and Assistant Manager Latasha Buckley came and assisted plaintiff to the personnel office (*id.* at 188-89, Page ID 1008-09; Vaillancourt Decl. ¶ 8, Page ID 741).  Ms. Vaillancourt assisted plaintiff in filling out an incident report, indicating that plaintiff fell after losing her footing while pulling a pallet; plaintiff reviewed and signed the report (Pltf. Dep. at 192-94, Page ID 1012-14; Pltf. Dep. Exh. 26, Page ID 535).  The Store Manager, Mark Darby, checked plaintiff's arms and opined that her wrist was not broken and that she could return to work (*id.* at 189, Page ID 1009).  After plaintiff insisted on getting medical attention, Ms. Buckley took her to a doctor's office where it was determined that she had a broken wrist (*id.* at 189-91, Page ID 1009-11).  Plaintiff had wrist surgery on March 6, 2012 (*id.* at 192, Page ID 1012).

Plaintiff returned to work on March 15, 2012, and she was temporarily assigned to answer the telephone near the fitting rooms, due to restrictions her doctor placed on her return to work (*id.* at 216-17, 220, Page ID 1036-37, 1040).  This assignment adequately accommodated plaintiff's medical restrictions (*id.* at 220, Page ID 1040).

Pursuant to Wal-Mart's practice of investigating all accidents that occur in the store, an investigation of plaintiff's fall was undertaken to determine the cause (Darby Dep. at 95-96, Page ID 668; Darby Decl. ¶ 6, Dkt. 46-12, Page ID 722). The investigation included a review of a surveillance video that captured the accident (Darby Decl. ¶¶ 6-7, Page ID 722). The video is actually two separate recordings of the incident, each from a different camera angle. The Court has reviewed the video in its entirety.

According to the date/time stamp, the video begins on March 1, 2013, a little after 3:16 p.m. (EST) (Pltf. Dep. Exh. 31, Dkt. 47). Plaintiff is working in what appears to be the back room of the store between two overhead doors. There is a wooden pallet on either side of where she is working, one of which (to her right) is resting on a pallet lift. At 3:27:45 p.m., plaintiff pulls an empty cart (presumably the L-Cart to which plaintiff referred in her account of the accident) over to her work area, leaving it at an angle behind her – there is little room between the L-Cart and the pallet lift, and no space between the L-Cart and the other pallet. Plaintiff removes a coat from the pallet lift handle and hangs it on the L-Cart. She immediately backs up and trips, while walking backward, on the corner of the L-Cart. As she falls, plaintiff grasps the handle of the pallet lift and takes it to the floor with her; she lands on her left hand/wrist. Within fifteen seconds of her fall, a young man comes to her assistance and walks away; by 3:29 p.m., two other persons (a man and a woman) have come to her side; at 3:29:50 p.m., another woman arrives and, soon thereafter, the young man who first came to plaintiff's assistance returns with a first-aid kit (all four individuals appear

to be Wal-Mart employees).  The four individuals assist plaintiff to her feet and walk her out of the back room.  The video ends at the 3:30:48 p.m. time stamp.[7]

After reviewing this video, as part of the investigation into the cause of the accident, Mr. Darby concluded that plaintiff caused her own accident by placing the L-Cart in the path she needed to walk, and in failing to look behind her as she walked backward in the direction of the cart (Darby Decl. ¶¶ 6-9, Page ID 722-23).  Mr. Darby decided that plaintiff should receive a coaching for her failure to follow proper workplace safety standards (*id.* ¶¶ 9-14, Page ID 722-24).  Mr. Darby consulted with his superior, Market Manager Diane Behnke, concerning this issue; after reviewing the video, Ms. Behnke agreed that plaintiff should be disciplined for engaging in an unsafe work practice (Behnke Dep. at 45-50, Page ID 701-02).  William Peters, whose responsibilities at the time included safety compliance at the store, also viewed the video and opined to Mr. Darby that plaintiff's accident could have been avoided had she exercised proper safety standards (Peters Decl. ¶¶ 4, 6, 12-13, Dkt. 46-19, Page ID 776-78).

---

[7]Plaintiff's initial version of how she came to fall differed from the video, including her contention that she did not trip over the L-Cart, and that she had placed it in a location to avoid tripping over it (Pltf. Dep. at 195-201, Page ID 1015-1021), but she acknowledged her version was inaccurate after viewing the video during her deposition (*id.* at 259-65, Page ID 1079-85).  At any rate, given there is no objection to the authenticity of the video, that evidence controls.  *See Scott v. Harris*, 550 U.S. 372, 377-81 (2007) (district court erred in accepting plaintiff's version of events for purposes of deciding a summary judgment motion when a videotape contradicted plaintiff's version).

Thereafter, Mr. Darby reviewed plaintiff's coaching history and discovered that she had already progressed through the first three disciplinary steps under the Coaching for Improvement Policy (Darby Decl. ¶ 16, Page ID 724).  Accordingly, he determined that the coaching for the unsafe work practice would result in plaintiff's termination (*id.*).  Mr. Darby directed then Shift Manager Jason Piotrowski and then Assistant Manager Kathy Vaillancourt to conduct the termination meeting with plaintiff (*id.* ¶ 20, Page ID 725; Piotrowski Dep. at 46, 74, Page ID 672-73).

## Analysis

Plaintiff alleges age discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act (ELCRA), which prohibits an employee's discharge because of age. MICH. COMP. LAWS § 37.2202(1)(a).  To sustain her ELCRA claim, plaintiff may rely upon direct or circumstantial evidence of discrimination; as to the latter, she has the benefit of the modified *McDonnell Douglas* burden-shifting approach.[8]  *See Town v. Michigan Bell Tel. Co.*, 455 Mich. 688, 695 (1997); *Marsh v. Eastern Associated Estates Realty*, 521 F. App'x 460, 466 (6th Cir. 2013).

The language of Michigan's ELCRA is "materially indistinguishable" from that of the Age Discrimination in Employment Act (ADEA).  *Maletich v. La-Z-Boy, Inc.*, No. 11-14615, 2013 WL 3328302, *9 (E.D. Mich. July 2, 2013).  The ADEA provides, in

---

[8]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  While the *McDonnell Douglas* case involved a claim of race discrimination, the holding has been adopted, in modified form, to age discrimination claims under the ELCRA.  *Matras v. Amoco Oil Co.*, 424 Mich. 675, 683 (1986); *see also Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (applying the modified *McDonnell Douglas* test to claims under the Age Discrimination in Employment Act).

pertinent part, that it is "unlawful for an employer . . . to discharge any individual . . . *because of* such individual's age." 29 U.S.C. § 623(a)(1) (emphasis supplied). Similarly, the ELCRA prohibits an employer from "discharg[ing] . . . an individual . . . *because of* . . . age." MICH. COMP. LAWS § 37.2202(1)(a) (emphasis supplied). Accordingly, "ELCRA claims are analyzed under the same standards as federal ADEA claims." *Geiger v. Tower Automotive*, 579 F.3d 614, 626 (6th Cir. 2009) (citing *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 523 (6th Cir. 2007).

The Supreme Court has clarified that the motivating-factor standard for age discrimination claims under the ADEA requires proof "that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009). Despite plaintiff's argument to the contrary (Post Hrg. Suppl. Br. at 2, Dkt. 67, Page ID 1820), this "but-for" standard applies to a claim brought under the ELCRA. *See Bondurant v. Air Line Pilots Ass'n, Int'l*, 679 F.3d 386, 394 (6th Cir. 2012) (under either statute the plaintiff bears the burden of proving that age was the "but-for" cause); *Marsh*, 521 F. App'x at 465-66 (under either the ADEA or the ELCRA "the plaintiff must provide facts that, if believed, would allow the factfinder to conclude that age was the but-for cause of the challenged adverse employment action"); *Isotalo v. Kelly Services, Inc.*, No. 12-11253, 2013 WL 5913839, *6 (E.D. Mich. Nov. 4, 2013) (applying the "but for" standard to both statutes) (citing *Blizzard*, 698 F.3d at 283; *Maletich*, 2013 WL 3328302 at *9 (applying the "but for" standard to both statutes).

In support of her contention that the ELCRA merely requires a showing that age was "a" determining factor, plaintiff cites a single unpublished decision of the Michigan

Court of Appeals (Post Hrg. Suppl. Br. at 2, Page ID 1820 (citing *Howard v. Mich. Dept. Corrections, et al.*, No. 304258 (copy provided at Dkt. 67-1)). A review of this decision does not alter the analysis here. First, the *Howard* decision does not specifically address the issue of whether the Supreme Court's holding in *Gross* applies to ELCRA cases; in fact, it does not cite that decision. Second, this Court is bound by the published decisions of the Sixth Circuit, including *Bondurant*, 679 F.3d at 394.

Plaintiff has failed to meet her burden of production, whether with direct or circumstantial evidence, to establish a triable issue under the "but for" standard.

## I.  Plaintiff Lacks Direct Evidence That Her Termination Was Based On Her Age.

Direct evidence is that which, if believed, compels the conclusion without the need for any inference, that unlawful discrimination motivated the employer's adverse action. *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462 (2001); *Bondurant*, 679 F.3d at 394. When a plaintiff establishes a claim of discrimination through direct evidence, "the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (addressing national-origin-discrimination claim) (citing *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 382 (6th Cir. 2002)).[9]

Plaintiff does not claim that the decision maker (Mark Darby) made any age-related comments to her; nor does she allege that anyone advised her she was

---

[9] *DiCarlo* was overruled on other grounds by *Gross*, 557 U.S. at 180 (applying the "but for" standard to ADEA claims), as stated in *Geiger*, 579 F.3d at 621.

being terminated because of her age (Pltf. Dep. at 290, 331, Page ID 1110, 1151). Instead, plaintiff relies upon two comments purportedly made by one of her former supervisors (Adam Eschtruth). The first was overheard by plaintiff's son to the effect that plaintiff was too old to be working. The second was made during plaintiff's October 2012 performance evaluation, in which she was asked when she was going to leave Wal-Mart.[10] Assuming the truth of these statements, and giving plaintiff the benefit of the inference that at least the first statement was age-discriminatory, as the Court must for purposes of this motion, plaintiff is unable to link either statement to the decision maker Mark Darby.

Rather, the undisputed facts lead inevitably to the conclusion that Mr. Eschtruth's age-related comments were unrelated "stray remarks." *See Krohn v. Sedgwick James of Mich., Inc.*, 244 Mich. App. 289, 292 (2001). In determining the relevancy of such remarks, the Court is to consider the following factors: (1) whether the remarks were made "by the decision maker or by an agent of the employer uninvolved in the challenged decision"; (2) whether the remarks were "isolated or part of a pattern of biased comments"; (3) whether the remarks made "close in time or remote from the challenged decision"; and (4) whether the remarks were "ambiguous

---

[10]Plaintiff testified that, during the 2012 performance evaluation meeting, Mr. Eschtruth repeatedly asked her when she was going to "quit" or "leave" Wal-Mart, noting that she had worked at Wal-Mart a long time (Pltf. Dep. at 135-37, 333, Page ID 955-57, 1153). Unrebutted evidence shows that, at the same time, Mr. Eschtruth gave her a 40-cent hourly pay increase (Eschtruth Decl. Exh. 3, Page ID 758). Assuming the statements occurred, it is not self-evident that they were directed at, or motivated by, plaintiff's age. Direct evidence generally cannot be based on isolated and ambiguous remarks. *Weigel*, 302 F.3d at 382.

or clearly reflective of discriminatory bias." *Id.*; *see also Worthy v. Michigan Bell Telephone Co.*, 472 F. App'x 342, 347 (6th Cir. 2012) (listing the same factors) (citing *Department of Civil Rights ex rel. Burnside v. Fashion Bug of Detroit*, 473 Mich. 863 (2005)).

In this case, Mr. Eschtruth was not involved in the decision to terminate plaintiff's employment. Unrebutted evidence establishes that he was not even working at the Lansing store at the time of plaintiff's termination; he had transferred to another store some four months earlier (Eschtruth Decl. ¶ 17, Page ID 748). Plaintiff acknowledged that she lacks evidence linking Mr. Eschtruth to the decision to terminate her (see Pltf. Dep. at 143, Page ID 963). Moreover, Mr. Eschtruth's remarks were made in September or October 2012, at least five months prior to plaintiff's termination. Accordingly, they are too remote in time to constitute direct evidence of discrimination. *See Wolfgang v. Dixie Cut Stone and Marble, Inc.*, No. 285001, 2010 WL 199595, at *2 (Mich. Ct. App. Jan. 21, 2010) (supervisor's comments made at least two months before plaintiff's termination, and not in connection with it, did not constitute direct evidence of gender discrimination).

The Sixth Circuit has consistently held that, for a statement to constitute evidence of discrimination, it must come from the decision maker. *See Geiger*, 579 F.3d at 620-21; *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir. 2004). "Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden . . . of demonstrating animus." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)

(internal quotation marks omitted); *see also Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 433 (6th Cir. 2002) (comments by a manager lacking any involvement in the decision-making process do not constitute direct evidence of discrimination).

Plaintiff's reliance on *Brewer v. New Era, Inc.*, 564 F. App'x 834 (6th Cir. 2014), is misplaced.  In *Brewer*, statements that plaintiffs were "too old" and "needed to retire" were made by a manager who authorized the layoff of employees, and the comments were made in front of the manager charged with deciding which employees to lay off.  *Id.* at 839.  The evidence also showed that the company failed to follow its seniority policy in selecting plaintiffs for layoff.  *Id.* at 841.  The Sixth Circuit held that the combination of the evidence was "sufficient to permit a reasonable fact-finder to conclude that Plaintiffs' terminations were not actually motivated by a reduction in force, but rather were a pretext for discrimination."  *Id*.  The facts of this case differ significantly from those in *Brewer*.

Plaintiff argues that the "decision maker" in this case extends beyond Mr. Darby to the entire team of managers, including Mr. Eschtruth, both because the managers worked as a "team," and because they participated in a chain of events (the coachings) that led to her dismissal (Pltf. Suppl. Br. at 2-6, Dkt. 66, Page ID 1813-17).  While both of plaintiff's underlying premises are undoubtedly true, they do not support her conclusion.  Whether operating as a team or individually, the focus of this case is, and must be, on the decision to terminate plaintiff's employment.  Wal-Mart has offered unrebutted testimony that that decision was made by Mr. Darby.  Other than Mr.

Eschtruth, plaintiff has no evidence of age-related animus by any member of the management team.[11]

Without evidence that Mr. Darby was at least aware of Mr. Eschtruth's age-discriminatory statement – and plaintiff offers none – Mr. Eschtruth's participation in the chain of events leading to plaintiff's termination does not alter the analysis here. The Sixth Circuit has long recognized the so-called "honest-belief" rule under which summary judgment may be granted on the basis of the employer's "honestly-believed" reason for taking an employment action, even if that reason is shown to be "mistaken, foolish, trivial, or baseless." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998). "[T]he employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Id.* at 806-07. The key inquiry is "whether the employer made a reasonably informed decision and considered decision before taking an adverse employment action." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). Once that is done, "the employee has the opportunity to produce 'proof to the contrary.'" *Smith*, 155 F.3d at 807 (quoting

---

[11]Plaintiff testified that a Wal-Mart associate, whose last name and position in the store was unknown to her, once told her that he (the associate) had overheard Mr. Darby and other managers talking in which Mr. Darby stated that he was looking for "any excuse they could find to get me out of the store" (Pltf. Dep. at 288-99, Page ID 1108-09). This testimony suffers from two disabilities: (1) it is inadmissable hearsay, Fed. R. Evid. 801(c), 802; and (2) it is not necessarily evidence of age discrimination. Assuming the statement was made, there is no context to suggest that plaintiff's age motivated Mr. Darby to make it. Similarly, plaintiff's testimony regarding Mr. Darby admonishments concerning the presence of shopping carts in the employees' locker room (Pltf. Dep. at 287, Page ID 1107) is not evidence of age discrimination.

*Pesterfield v. TVA*, 941 F.2d 437, 443 (6th Cir. 1991)); *see also Seeger*, 684 F.3d at 286 (To rebut the employer's invocation of the honest-belief rule, plaintiff must offer some evidence of "an error on the part of the employer that is too obvious to be unintentional.").

While the honest-belief rule generally applies within the context of analyzing an employer's stated nondiscriminatory reason within the *McDonnell Douglas* burden-shifting approach, it's rationale must inform the Court's analysis here. Wal-Mart has provided evidence that Mr. Darby made the decision to terminate plaintiff's employment following her March 1, 2013, accident, due to the fact that she had reached the fourth and final level of Wal-Mart's disciplinary process. Assuming Mr. Eschtruth made an age-discriminatory comment, and even assuming that he was motivated by age-related animus in issuing the August 27, 2012, coaching for excessive absences (the third coaching), plaintiff has offered no evidence that Mr. Darby knew about, much less shared, Mr. Eschtruth's discriminatory attitude. Accordingly, plaintiff's link-in-a-chain argument fails.

## II. Plaintiff Has Failed To Meet Her Burden Of Production To Establish That Defendant's Stated Nondiscriminatory Reason For Her Termination Was Pretextual.

Absent direct evidence of age discrimination, plaintiff must rely on the modified *McDonnell Douglas* burden-shifting approach. To establish a *prima facie* case, she must show that she was "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct."

*Town*, 455 Mich. at 695.    If the *prima facie* case is established, a rebuttable presumption of discrimination arises, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action.  *Id.* at 695-96; *Hazle v. Ford Motor Co.*, 464 Mich. 456, 463-64 (2001).  "Once the employer produces evidence of a nondiscriminatory reason for the discharge, even if that reason later turns out to be incredible, the presumption of discrimination evaporates." *Town*, 455 Mich. at 695 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981)); *cf. Hazle*, 464 Mich. at 463-64 ("[T]he fact that a plaintiff has established a prima facie case of discrimination . . . does not necessarily preclude summary disposition in the defendant's favor." (citing *Burdine*, 450 U.S. at 254 n.7)).

During oral argument, Wal-Mart conceded that plaintiff has made out a prima facie case of age discrimination.  Wal-Mart argues, instead, that plaintiff has failed to meet her burden of production to establish that Wal-Mart's stated nondiscriminatory reason for firing her was pretextual.  Wal-Mart's stated reason for terminating plaintiff's employment is that "she engaged in unsafe work practices in violation of Wal-Mart's safety policies and her conduct brought her to the fourth and final step of the Company's progressive discipline policy" (Def. Br. at 18, Dkt. 46, Page ID 447). With that, the burden shifts back to plaintiff to produce "sufficient evidence from which a jury could reasonably reject [Wal-Mart's] explanation of why it terminated her." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 268 (6th Cir. 2010) (citing *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009)).  Moreover, she retains the burden of proving that, not only is Wal-Mart's stated reason for her

termination pretextual, but that it would not have occurred "but for" her age.  *See Geiger*, 579 F.3d at 626.

In an effort to rebut Wal-Mart's stated reason for her termination, plaintiff argues generally that the three coachings preceding her termination are "inherently unreliable and unsupported by admissible evidence" (Pltf. Br. at 13, Dkt. 53, Page ID 1636); that the documents relating to the coachings were not contained in her personnel file, in violation of Michigan's Bullard-Plawecki Employee Right-to-Know Act (*id.* at 14, Page ID 1637); and that the coachings were unsigned, and therefore, cannot be authenticated (*id.* at 15-16, Page ID 1638-39).  Nothing in these arguments or the evidence cited by plaintiff meets her burden of producing sufficient evidence to create a triable issue as to whether Wal-Mart's stated reason was pretextual.

Plaintiff's arguments regarding the authenticity of the coaching documents and the admissibility of the evidence relating to the first three coachings ignore the fact that plaintiff, herself, has acknowledged that each occurred.  As for the first coaching relating to the attempted return of a broken laptop, plaintiff acknowledged most of the underlying facts, denying only that she told the manager involved that another manager had been coached for refusing a similar return (Pltf. Dep. at 156-59, Page ID 976-79).  Plaintiff also conceded having met with the Wal-Mart managers who issued the coaching (*id.* at 159-61, Page ID 979-81).  Plaintiff simply disputes that this meeting with the two managers constituted "discipline" (*id.* at 161).  But plaintiff's subjective interpretation does not defeat summary judgment.  *See Chen*, 580 F.3d at 400 (To defeat summary judgment, plaintiff "must produce sufficient evidence for

which a jury could reasonably reject [the employer's] explanation of why [it] fired her."); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir.1992) (A plaintiff's "conclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law."); *Wrobbel v. Int'l Bhd of Elec. Workers, Local 17*, 638 F. Supp.2d 780, 795 (E.D. Mich. 2009) ("[I]t is well-settled that subjective beliefs untethered to the evidence will not support a substantive discrimination claim.").

Plaintiff acknowledged the occurrence of the second coaching for mispackaging a hazmat item that had been returned to the store. Moreover, she conceded that she entered her computer user ID and password at the time of the coaching, and that she drafted an action plan, which included her admission that she had made a "mistake" (Pltf. Dep. at 93, Page ID 913; Pltf. Dep. Exh. 16, Dkt. 46-3, Page ID 527). Plaintiff's testimony to the effect that Mr. Darby advised her that this coaching would not appear on her record (*id.* at 91, Page ID 911) does not constitute evidence of pretext.

As with the second coaching, plaintiff acknowledged both that the third coaching for excessive absences occurred and that she drafted an action plan regarding that matter (Pltf. Dep. at 169, Page ID 989). While she disputes some of the absences used as the bases for this disciplinary action, she has offered no admissible evidence to rebut Wal-Mart's records, nor does she challenge the authenticity of these records.

Wal-Mart has proffered evidence that the coachings are documented electronically (Piotrowski Dep. at 113-15, Page ID 676-77; Vaillancourt Dep. at 39, Page ID 688). A manager prepares for the coaching by typing the relevant information

and applicable policy into the computer; the manager then reviews it with the associate (Vaillancourt Dep. at 39-40, Page ID 688).  The attending managers electronically sign each coaching, and with respect to each of the second and third steps in the disciplinary process, the associate also acknowledges having received it by entering her Wal-Mart computer user ID and password (*id.*; Piotrowski Dep. at 118-19, 123, 125-26, 192-93, Page ID 677-79, 682; Behnke Dep. at 26, 38, Page ID 698-99).[12]  The evidence shows that these practices were followed with respect to plaintiff's coachings. Moreover, plaintiff has acknowledged entering her user ID and password, at least with respect to the second and third Coachings.

Plaintiff's argument regarding the Bullard-Plawecki Employee Right-to-Know Act does not alter the outcome here.  Even assuming Wal-Mart violated one of the terms of this statute, she offers nothing to suggest that the violation is indicative of age animus.  Moreover, the statute gives an employee the right to review her personnel file "upon written request"; it does not dictate where the personnel file is to be maintained. *See* MICH. COMP. LAWS § 423.503; *see also Jordan v. National City Bank*, Nos. 309428, 309438, 2014 WL 1233718, at *10 (Mich. Ct. App., Mar. 25, 2014).

Plaintiff also raises several specific complaints about the coachings she received (Pltf. Br. at 16-24, Page ID 1639-47).  She offers nothing, however, to demonstrate that

---

[12]Under Michigan law, electronic signatures have the same legal effect as handwritten ones.  *See* MICH. COMP. LAWS § 450.837; *see also Martyn v. J.W. Korth & Co.*, No. 1:11-cv-407, 2011 WL 2144618, at *2 (W.D. Mich. June 1, 2011) ("[U]nder Michigan law, '[a] record or signature shall not be denied legal effect or enforceability solely because it is in electronic form.") (quoting MICH. COMP. LAWS § 450.837).

there is a material dispute of fact regarding whether the coaching sessions occurred, whether Mr. Darby relied in "honest belief" upon them in making the decision to terminate her employment, or whether Mr. Darby's stated reason for firing her was genuine.  Accordingly, she has failed to meet her burden of production to establish pretext.

The question here is not whether Mr. Darby made a good decision in terminating plaintiff's employment; the issue is whether his decision was motivated by age discrimination.  *Cf. Skelton v. Sara Lee Corp.*, 249 F. App'x 450, 462 (6th Cir. 2007) ("[E]ven if we assume that Defendant's evaluation process was haphazard . . . there exists no reasonable inference that Defendant discriminated on the basis of age.")*; Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1285 (9th Cir. 2000) ("That [the employer] made unwise business judgments or that it used a faulty evaluation system does not support the inference that [it] discriminated on the basis of age.").  Having carefully reviewed the record and all of plaintiff's arguments, the Court finds that plaintiff has failed to meet her burden to produce sufficient evidence from which a jury could reasonably reject Wal-Mart's stated nondiscriminatory reason for terminating her.  *See Schoonmaker*, 595 F.3d at 268; *Chen*, 580 F.3d at 400.  Much less can she prove that Wal-Mart would not have fired her "but for" her age.  *See Bondurant*, 679 F.3d at 394; *Geiger*, 579 F.3d at 626.

## Conclusion

For the reasons set forth herein, defendant Wal-Mart's motion for summary judgment (Dkt. 45) will be granted.  A judgment consistent with this opinion will issue.


Date:  January 13, 2015                                      /s/ Phillip J. Green
                                                     PHILLIP J. GREEN
                                                     United States Magistrate Judge